J-A26035-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL JAMES LONG | |
| Appellant | No. 26 MDA 2015 |

Appeal from the Judgment of Sentence of December 3, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No.: CP-06-CR-0003611-2014

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED NOVEMBER 06, 2015**

Michael James Long appeals his December 3, 2014 judgment of sentence. We affirm.

The trial court summarized the procedural and factual history of this case as follows:

> On or about January 15, 2014, Amber Godbee discovered seven fraudulent purchases had been made on her Lowe's Visa credit card after receiving her [] credit card statement. Ms. Godbee testified at trial that the last time she personally used the credit card herself was on December 18, 2013. The fraudulent charges on her statement occurred between December 20, 2013 and January 1, 2014. The purchases were made on Ms. Godbee's credit card at the Lowe's in Spring Township, Berks County, Pennsylvania.
>
> In the first week of January 2014, Ms. Godbee and [Long] broke off their engagement. On January 8, 2014, Ms. Godbee obtained

---

[*]    Retired Senior Judge assigned to the Superior Court.

a Protection from Abuse Order[1] against her ex[-]fiancé, [Long]. After the breakup, while going through the items left at her residence by [Long,] Ms. Godbee discovered several credit card receipts from December 20, 2013, and January 1, 2014. Ms. Godbee confirmed that she did not give [Long] permission to use her credit card on December 20, 2013 nor did she give him permission to use the credit card on January 1, 2014.

Once the Lowe's credit card statement was received by Ms. Godbee she immediately notified the Lowe's credit card company. The credit card company canceled Ms. Godbee's credit card and issued Ms. Godbee a new one. After notifying the credit card company, Ms. Godbee contacted the Spring Township Police Department to report the fraudulent purchases made on her credit card.

As part of the investigation, Detective Matthew Hlavac notified the Lowe's loss prevention center concerning the fraudulent purchases made on Ms. Godbee's credit card. [Craig] Dublin, the loss prevention manager for the Sinking Spring Lowe's, was able to locate surveillance video of the transactions that took place on January 1, 2014. In the still photographs made from the surveillance video, [Long] was identified as purchasing the power tools listed on January 1, 2014, by Ms. Godbee.

Trial Court Opinion ("T.C.O."), 2/11/2015, at 2-3.

Following a jury trial on December 3, 2014, Long was convicted of access device fraud, theft by unlawful taking or disposition, receiving stolen property, and identity theft.[2] The jury acquitted Long of forgery.[3] On that same day, the trial court sentenced Long to thirty months to seven years'

---

[1]     *See* 23 Pa.C.S. § 6101, *et seq.*

[2]     18 Pa.C.S. §§ 4106(a)(1)(ii), 3921(a), 3925(a), and 4120(a), respectively.

[3]     18 Pa.C.S. § 4101(a)(2).

- 2 -

imprisonment for access device fraud, and one to five years' imprisonment for theft by unlawful taking, which the trial court imposed concurrently. On January 2, 2015, Long filed a notice of appeal. On January 6, 2015, the trial court ordered Long to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Long timely complied.[4] On February 11, 2015, the trial court filed a Pa.R.A.P. 1925(a) opinion.

Long raises two issues for our consideration:

I.     Whether the evidence admitted at trial was insufficient to support the conviction for the charge of identity theft?

II.    Whether the trial court committed prejudicial error in denying the admission into evidence of defense exhibits demonstrating examples of [Long's] signature?

Brief for Long at 7.

Long's first issue challenges the sufficiency of evidence to prove him guilty of identity theft. When examining a challenge to the sufficiency of evidence:

> [t]he standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder

---

[4]     The trial court's concise statement order initially was distributed to the incorrect attorney. On February 4, 2014, the trial court provided Long's counsel with a copy of the order. **See** T.C.O. at 2.

unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005)).

A person is guilty of identity theft "if he possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose." 18 Pa.C.S. § 4120(a). Long focuses upon the "identifying information" element of the offense, and alleges that the Commonwealth did not prove beyond a reasonable doubt that he used Ms. Goodbee's "identifying information," only her credit card. However, the statute clearly defines identifying information to include:

[a]ny document, photographic, pictorial or computer image of another person, or any fact used to establish identity, including, but not limited to, a name, birth date, Social Security number, driver's license number, nondriver governmental identification number, telephone number, checking account number, savings account number, student identification number, employee or payroll number or electronic signature.

18 Pa.C.S. § 4120(f). The statute then defines the term "document" as follows:

Any writing, including, but not limited to, birth certificate, Social Security card, driver's license, nondriver government-issue identification card, baptismal certificate, **access device card**,

> employee identification card, school identification card or other identifying information recorded by any other method, including, but not limited to, information stored on any computer, computer disc, computer printout, computer system, or part thereof, or by any other mechanical or electronic means.

*Id.* (emphasis added).

In his brief, Long asserts that "he has not committed identity theft, because he never claimed to be Ms. Godbee or use her identity in any way, he used her credit card. And he used it without authorization." Brief for Long at 10 (capitalization modified for clarity). It is apparent that Long either has incorrectly interpreted the identity theft statute, or has not read it in its entirety. The statute unambiguously provides that "access device cards" are documents that constitute identifying information.[5] Thus, one can be convicted of identity theft if there is sufficient evidence to demonstrate beyond a reasonable doubt that he or she used another's credit card without authorization to further an unlawful purpose.

Viewing the evidence in light most favorable to the Commonwealth, there was sufficient evidence to enable the jury to find Long guilty of identity

---

[5] ***See also*** 18 Pa.C.S. § 4106(d), which defines "access device" to include:

> Any card, including, but not limited to, a credit card, debit card and automated teller machine card, plate, code, account number, personal identification number or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services or anything else of value or that can be used to transfer funds.

theft. The Commonwealth presented two witnesses and photographic evidence that tied Long to the credit card usage on the dates in question. Ms. Goodbee testified that she did not authorize the purchases made using her Lowe's credit card on December 20, 2013 and January 1, 2014. Notes of Testimony ("N.T"), 12/2/2014, at 5-6, 14-15. She testified that Long had access to her purse, but that she never gave him permission to use her credit card. *Id.* at 11-12, 14-15. Mr. Dublin testified that the store's surveillance cameras captured Long purchasing items at Lowe's on December 20, 2013 and January 1, 2014. *Id.* at 55-57. The Commonwealth also introduced the receipts from those unauthorized purchases. *Id.* at 54-57. Accordingly, there was ample evidence to support the jury's conclusion that Long used Ms. Goodbee's identifying information (*i.e.* her credit card) without her consent.

Long also appeals the trial court's denial of his request to enter evidence of his signature. At trial, Long requested that the court take judicial notice of a subpoena that he had allegedly signed prior to trial. Long stated that his desire was to "move [the document] into evidence and have the jury review it." N.T. at 82. Long argued that, because the document was part of the discovery materials received from the Commonwealth in this case, the signature undisputedly was Long's. The trial court refused to take judicial notice of the document, or of the signature. The trial court explained that a witness would need to testify in order to "connect the dots" and to establish that the signature was Long's. *Id.*

Long argues that the trial court's decision not to take judicial notice of the subpoena amounts to a reversible error. In his brief, Long states that, if the jury would have seen his signature, they would have realized that Long signed his own name on the Lowe's receipts and that he "was not attempting to pass his signature off as that of another." Brief for Long at 21. He also contends that this evidence would discredit Ms. Godbee because she testified that she did not recognize the signature on the Lowe's receipt as Long's.

Our standard of review of challenges to the admissibility of evidence is well settled:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.
>
> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (citation omitted).

Pursuant to the Pennsylvania Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy

cannot reasonably be questioned." Pa.R.E. 201(b)(2). Judicial notice is intended to avoid the formal introduction of evidence in limited circumstances where the fact sought to be proven is so well established that it is considered common knowledge.[6] *See Kinley v. Bierly*, 876 A.2d 419, 421 (Pa. Super. 2005).

Neither the subpoena, nor the signature contained thereon, were "facts" that are not subject to reasonable dispute. "The doctrine of judicial notice cannot be invoked to cover evidentiary gaps of a party who has failed to meet a burden of proof." *Commonwealth v. Story*, 440 A.2d 488, 496 (Pa. 1981) (citation omitted). Here, Long was attempting to use judicial notice to overcome the evidentiary burden of establishing the authenticity of the subpoena. Long sought to have the trial court take judicial notice of the entire document, and then submit that document to the jury as an exhibit. However, merely invoking the phrase "judicial notice" does not permit a litigant to sidestep the requirement that documentary evidence be authenticated. *See* Pa.R.E. 901; *Commonwealth v. Brooks*, 508 A.2d 316, 318 (Pa. Super. 1986) ("A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of

---

[6] For example, a trial court may take judicial notice of the county in which a town or city is located or the location of a road or highway. *Commonwealth v. Varner*, 401 A.2d 1235, 1236 (Pa. Super. 1979); *Commonwealth v. Sestina*, 546 A.2d 109, 112 (Pa. Super. 1988).

authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting."). Indeed, the express purpose of the doctrine of judicial notice is to **avoid** the formal introduction of evidence. *Kinley*, *supra*. Long's attempted use of judicial notice was misplaced, and the trial court did not err in refusing to take judicial notice of the subpoena.

In any event, the evidence that Long sought to admit was irrelevant. Long told the trial judge he was attempting to enter evidence of his signature to prove that he had not "pretended to be [Ms. Godbee]." N.T. at 68.[7] Long does not dispute that he used Ms. Godbee's access device card without her permission, but he argues that, because he did not sign her name, he did not commit identity theft. Again, Long makes his misreading of the identity theft statute apparent. Even if the trial court had taken judicial notice of Long's signature, it would have done little to change to the verdict because, pursuant to the statute, it is of no consequence whose name Long signed on the Lowe's receipt.

Judgment of sentence affirmed.

_____

[7] In his brief, Long changes his primary reason for entering the document from his argument at trial. He now submits that the signatures would have served to discredit Ms. Goodbee, as she testified that she did not recognize the signature on the receipt as Long's. However, Ms. Godbee also testified that, when she had previously seen Long's signature, it was his full name. N.T. at 28, 33 Long only signed the Lowe's receipt using his initials. Therefore, even if Long had raised and preserved this argument, it is without merit because the evidence in no way compels the conclusion that Ms. Goodbee was an incredible witness.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/6/2015</u>