J. S08016/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                   :          PENNSYLVANIA
              v.           :
                                   :
DAVID M. HORSEY,               :        No. 558 WDA 2016
                                   :
            Appellant    :

Appeal from the Judgment of Sentence, March 10, 2016,
in the Court of Common Pleas of McKean County
Criminal Division at No. CP-42-CR-0000608-2014

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND SOLANO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED MARCH 09, 2017**

David M. Horsey appeals from the judgment of sentence of March 10, 2016, following his conviction of one count of driving under the influence ("DUI") -- incapable of safe driving[1] and related summary offenses. We affirm appellant's convictions, but vacate the judgment of sentence and remand for resentencing.

The factual and procedural history of this case can be briefly summarized as follows. Pennsylvania state trooper Frederick W. Burns, III, testified that at the time of this offense, he was assigned to the Kane barracks. (Notes of testimony, 11/16/15 at 65.) On the evening of August 9, 2014, he was called to the site of a one-vehicle accident on State

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

Route 146, Cleremont Road. (*Id.* at 66-67.) When he arrived on scene, he observed a vehicle pulled off to the right-hand side of the road, with the rear tires elevated off the road. (*Id.* at 67.) Firefighters directed him to appellant's location further down the road. (*Id.*)

When he encountered appellant, he noticed that his eyes were bloodshot, watery, and glassy. (*Id.* at 69.) There was an odor of alcohol emanating from appellant's breath and person. (*Id.*) Appellant related that he was heading home when he hit a deer. (*Id.* at 71.) Trooper Burns asked appellant how much he had to drink that day, and appellant replied, "nothing." (*Id.*)

Trooper Burns transported appellant back to the scene of the accident. (*Id.* at 72.) Trooper Burns asked appellant for his insurance and registration; appellant did not have a registration card and his proof of financial responsibility was expired. (*Id.* at 73.) Trooper Burns attempted to conduct field sobriety testing, but appellant refused to cooperate. (*Id.* at 78.) At that point, Trooper Matt Petrof arrived on the scene. (*Id.* at 80, 119-120.) Appellant continued to refuse to comply with the troopers' attempts to administer standardized field sobriety testing and was placed under arrest for suspicion of DUI. (*Id.* at 80, 120.) Appellant was also read

his DL-26[2] implied consent warnings and refused chemical testing. (***Id.*** at 81-82, 121; Commonwealth's Exhibit 2.) Trooper Burns saw no evidence that appellant's vehicle had struck a deer. (***Id.*** at 84-85.)

Following a jury trial before the Honorable John H. Pavlock, appellant was found guilty of count 1, DUI. Judge Pavlock found appellant guilty of count 2, registration card to be signed and exhibited on demand,[3] and count 5, careless driving.[4] Appellant was found not guilty of the remaining summary offenses. (***Id.*** at 172-173.) On March 10, 2016, appellant was sentenced to 30 days' to 6 months' incarceration for DUI and fines on the summary offenses. (Docket #13.) The trial court granted appellant's motion for bail and stay of sentence pending appeal. Timely post-sentence motions were denied on March 18, 2016, and this timely appeal followed on April 18, 2016. On April 27, 2016, appellant was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P. 1925(b); appellant timely complied on May 16, 2016, and on June 13, 2016, the trial court filed a Rule 1925(a) opinion.

Appellant has raised the following issues for this court's review:

---

[2] The DL–26 form contains warnings of the potential consequences of a person's refusal to consent to a blood test, including that the individual's license could be suspended for at least one year, and that if convicted of violating 75 Pa.C.S.A. § 3802(a), the individual will face more severe penalties because of the refusal.

[3] 75 Pa.C.S.A. § 1311(b).

[4] 75 Pa.C.S.A. § 3714(a).

> I. Should judgement of sentence be reversed by operation of law under the circumstances of this case because the Commonwealth failed to present sufficient evidence in the record that appellant drove in McKean County, the Commonwealth having presented no evidence at trial that the underlying location of the vehicle crash and subsequent stop are located in McKean County?
>
> II. Should the case be remanded for resentencing in light of the fact that the arresting officer did not receive and execute a search warrant before demanding that appellant submit to a blood test?

Appellant's brief at 5 (unnecessary capitalization omitted).

In his first issue on appeal, appellant claims that the Commonwealth failed to present sufficient evidence of where the offense occurred to establish jurisdiction. We disagree.

> A court has no jurisdiction over an offense unless the offense occurred within the county in which the trial takes place. **Commonwealth v. Thomas**, 305 Pa.Super. 158, 451 A.2d 470 (1982). The burden to establish the court's jurisdiction is on the Commonwealth. **Commonwealth ex rel. Chatary v. Nailon**, 416 Pa. 280, 285, 206 A.2d 43 (1965).

**Commonwealth v. Sestina**, 546 A.2d 109, 112 (Pa.Super. 1988), **appeal denied**, 554 A.2d 508 (Pa. 1989).

> For a county to exercise jurisdiction over a criminal case, an overt act involved in the crime must have occurred within that county. **Commonwealth v. Bradfield**, 352 Pa.Super. 466, 508 A.2d 568, 571 (1986), **appeal denied**, 513 Pa. 633, 520 A.2d 1384 (1987) (citing **Commonwealth v. Tumolo**, 455 Pa. 424, 427, 317 A.2d 295, 297 (1974)). "While the Commonwealth bears the burden of

proving facts sufficient to establish jurisdiction, it may rely upon circumstantial evidence to meet its burden." **Bradfield**, **supra**.

**Commonwealth v. Passmore**, 857 A.2d 697, 709 (Pa.Super. 2004), **appeal denied**, 868 A.2d 1199 (Pa. 2005).

"The doctrine of judicial notice is intended to avoid the necessity for the formal introduction of evidence in certain cases when there is no real need for it, where a fact is so well established as to be a matter of common knowledge." **Albert Appeal**, 372 Pa. 13, 20, 92 A.2d 663, 666 (1952); **See Commonwealth ex rel. Duff v. Keenan**, 347 Pa. 574, 582-83, 33 A.2d 244, 249 (1943) ("so well known as to be incontestable."). Included in the subjects appropriate for judicial notice is the county in which a town or city is located, **[s]ee Emert v. Larami Corp.**, 414 Pa. 396, 200 A.2d 901 (1964); **Commonwealth v. Kaiser**, 184 Pa. 493, 39 A. 299 (1898), and the location of roads and highways. **See Schmidt v. Allegheny County**, 303 Pa. 560, 154 A. 803 (1931); **Commonwealth v. Ball**, 277 Pa. 301, 121 A. 191 (1923).

**Commonwealth v. Varner**, 401 A.2d 1235, 1236 (Pa.Super. 1979).

In **Varner**, the offense occurred in the parking lot of the Shippensburg Fair Grounds and on Possum Hollow Road near the Fair Grounds. **Id.** While the appellant never alerted the prosecution that the county of the offense was in issue, he argued on post-trial motions and on appeal that Shippensburg is near the border of Cumberland and Franklin counties and that the prosecution never specifically established that the **situs** of the offense was in Franklin County. **Id.** at 1235-1236. This court held that the trial court did not err in taking judicial notice that the offense occurred in

Franklin County where the locality of the offense was only technically in issue. **Id.** at 1236. In overruling post-trial motions, the trial court took judicial notice that "it is a well-known geographical fact that" the area near the Fair Grounds where the appellant was arrested is in Franklin County. **Id.** at 1235. **See also Sestina**, 546 A.2d at 112 (where the Commonwealth established a specific street and intersection location, the trial court would have been entitled to take judicial notice of the fact that the site of the offense was in Warren County).

Here, Trooper Burns testified that the crash occurred on State Route 146. (Notes of testimony, 11/16/15 at 67.) The criminal information identified the location as "State Route 146/Red Mill Road near Creekside Drive, Norwich Township." (Docket #32.) This was sufficient for the trial court to take judicial notice that the incident occurred in McKean County. As Judge Pavlock explained in his Rule 1925(a) opinion:

> [Appellant] is correct that the underlying location of the vehicle crash and subsequent stop were never specifically identified as being located in McKean County. This was clearly an oversight by the Commonwealth. However, in accordance with **Commonwealth v. Sestina**, the court can take judicial notice that State Route 146 or "Clermont Road"[5] is located entirely within McKean County, Pennsylvania, which is a physical fact that cannot be disputed. If facts existed that could establish that even a small portion of that Route was not in McKean County the court would rule in [appellant]'s favor. However, because Route 146 is where it is

---

[5] In the trial transcript it is spelled "Cleremont Road." (Notes of testimony, 11/16/15 at 67.)

and cannot be moved, there is nothing that could demonstrate that the location of this "crash" was anywhere other than McKean County. Further, although standing alone it would not establish location, the fact that Trooper Burns testified that he was assigned to the Kane Barracks, which covers McKean County is additional evidence that the location was in McKean County. In sum, although not ideal, there is sufficient evidence to establish venue or jurisdiction in McKean County, and, therefore, the motion for demurrer or motion for direct[ed] verdict was properly denied.

Trial court opinion, 6/13/16 at 2-3. We agree.

We now turn to appellant's second issue on appeal. Appellant basically argues that his sentence was illegal under the recent United States Supreme Court case of ***Birchfield v. North Dakota***, ___ U.S. ___, 136 S.Ct. 2160 (2016), which invalidates any criminal sanction assessed for refusing to submit to a blood test in the absence of a warrant. We are constrained to agree.

Initially, we note that appellant did not raise this issue in the court below; in post-sentence motions and in his Rule 1925(b) statement, he only challenged jurisdiction. The Commonwealth contends that the issue is waived on this basis. (Commonwealth's brief at 8.) However, the issue goes to the legality of appellant's sentence, which is non-waivable. ***See Commonwealth v. Barnes***, 151 A.3d 121, 127 (Pa. 2016) ("[W]here the mandatory minimum sentencing authority on which the sentencing court relied is rendered void on its face, and no separate mandatory authority supported the sentence, any sentence entered under such purported

authority is an illegal sentence for issue preservation purposes on direct appeal."); ***Commonwealth v. Foster***, 17 A.3d 332, 345 (Pa. 2011) (plurality) ("[W]here a sentencing court is required to impose a mandatory minimum sentence, and that mandatory minimum sentence affects a trial court's traditional sentencing authority or the General Assembly's intent in fashioning punishment for criminal conduct, a defendant's challenge thereto sounds in legality of sentence and is therefore nonwaivable."). ***See also Commonwealth v. Edrington***, 780 A.2d 721, 723 (Pa.Super. 2001), citing ***Commonwealth v. Vasquez***, 744 A.2d 1280 (Pa. 2000) (application of a mandatory sentencing provision implicates the legality of the sentence, not the discretionary aspects of the sentence).

In addition, ***Birchfield*** was decided on June 23, 2016, after appellant's sentence, but during the pendency of the instant appeal. Where a United States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." ***Schriro v. Summerlin***, 542 U.S. 348, 351 (2004). The Commonwealth cites case law for the proposition that in order for a new rule to apply retroactively to a case pending on direct appeal, the issue had to be preserved at all stages of litigation up to and including the direct appeal. (Commonwealth's brief at 8, citing ***Commonwealth v. Tilley***, 780 A.2d 649 (Pa. 2001); ***Commonwealth v. Cabeza***, 469 A.2d 146 (Pa. 1983).) ***See also*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and

cannot be raised for the first time on appeal."). However, the Pennsylvania Supreme Court in **Barnes** made clear that "an exception to the issue-preservation requirement exists where the challenge is one implicating the legality of the appellant's sentence." **Barnes**, 151 A.3d at 124, citing **Commonwealth v. Dickson**, 918 A.2d 95, 99 (Pa. 2007). Therefore, the matter is not waived, and appellant is entitled to retroactive benefit of the new rule.[6]

In **Birchfield**, as in this case, the defendant refused a blood test after being read his implied consent warnings. He was advised that his refusal to undergo blood alcohol content ("BAC") testing would expose him to criminal penalties. **Birchfield**, 136 S.Ct. at 2170. Birchfield pled guilty to a misdemeanor violation of the North Dakota refusal statute, but argued that the Fourth Amendment prohibited criminalizing his refusal to submit to the test. **Id.** at 2170-2171. The United States Supreme Court agreed and reversed Birchfield's conviction, holding that a State may not criminalize a motorist's refusal to comply with a demand to submit to blood testing.

The **Birchfield** Court distinguished between breath and blood tests, the latter of which it found to be significantly more intrusive. **Id.** at 2184. The Court determined that with regard to blood tests, the police must either

---

[6] The Commonwealth does not dispute that appellant was sentenced under 75 Pa.C.S.A. § 3804(c), providing for mandatory penalties for refusal: "On March 10, 2016, [appellant] was sentenced pursuant to 75 Pa.C.S.A. § 3804(c) for a first offense DUI with the refusal sentencing enhancement." (Commonwealth's brief at 1.)

seek a warrant or show exigent circumstances. *Id.* The Court in *Birchfield* also rejected the argument that warrantless blood tests are justified based on the driver's legally implied consent to submit to them:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Id.* at 2185 (citations omitted).

Appellant cannot be subject to enhanced criminal penalties for refusal to submit to a blood test. *See also Commonwealth v. Giron*, ___ A.3d ___, 2017 WL 410267 (Pa.Super. filed Jan. 31, 2017) ("[P]ursuant to *Birchfield*, in the absence of a warrant or exigent circumstances justifying a search, a defendant who refuses to provide a blood sample when requested by police is not subject to the enhanced penalties provided in 75 Pa.C.S.A. §§ 3803-3804." (footnote omitted)); *Commonwealth v. Evans*, ___ A.3d ___, 2016 WL 7369120 at *8 (Pa.Super. Dec. 20, 2016) (vacating the judgment of sentence and remanding for a re-evaluation of the appellant's purported consent where the appellant only consented to the warrantless

blood draw after being informed, by the police, that refusal to submit to the test could result in enhanced criminal penalties, in violation of **Birchfield**).[7]

Therefore, it is necessary to remand for resentencing without consideration of the mandatory minimum sentence in Section 3804(c).

Judgment of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.

---

[7] The Supreme Court in **Birchfield** consolidated three separate cases, one of which was petitioner Steve Michael Beylund's case. After Beylund's arrest for DUI, the officer informed him of North Dakota's implied consent advisory and that "test refusal in these circumstances is itself a crime." **Birchfield**, 136 S.Ct. at 2172. Beylund then agreed to the requested blood draw, and testing revealed a BAC of 0.250%, more than three times the legal limit. **Id.** Beylund appealed, principally arguing that his consent to the blood test was coerced by the officer's warning that refusing to consent would itself be a crime. The North Dakota Supreme Court found that Beylund's consent was valid, emphasizing that North Dakota's implied consent advisory was not misleading because it truthfully related the penalties for refusal. The **Birchfield** Court rejected this rationale:

> The North Dakota Supreme Court held that Beylund's consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests. Because voluntariness of consent to a search must be determined from the totality of all the circumstances, we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory.

**Id.** at 2186 (citation and quotation marks omitted).

J. S08016/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/9/2017